FAGAIMA M. SOLAITA and ΓUMAI MATAGI, Plaintiffs,

v.

LIZ TAYLOR, Defendant.

---

LIZ TALILOA, FIATAFUNA TUALATIA, AVALOGO TAYLOR and LEOTA JOE TAYLOR, FAAVAE TAYLOR, Plaintiffs,

v.

ΓUMAI MATAGI, AITUI TITUI, TOMOTO FILO, PEKA FILO, MATELIKA AITUI, ACE, AFATIA TAYLOR and LIUFAU, Defendants.

High Court of American Samoa
Land and Titles Division

LT No. 20-03
LT No. 38-03

December 13, 2004

Before KRUSE, Chief Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiffs/counter-defendants Fagaima M. Solaita, I`umai Matagi et al., Katopau T. Ainu`u
For Defendant/counter-plaintiffs Liz Taylor et al, Tauivi Tuinei

## OPINION AND ORDER

These matters, consolidated for trial, involve the same subject matter, Fagaima family land. The earlier numbered matter, LT No. 20-03, resulted as a referral from the Territorial Registrar's office following defendant Liz Taylor's objection to plaintiff Fagaima M. Solaita's ("Fagaima") attempt to record a Separation Agreement he had concluded, as *sa`o* (senior *matai*) of the Fagaima family of Tafuna, with defendant I`umai Matagi ("Matagi") and dated November 19, 2002. The subject of the Separation Agreement was a proposed renovation to a structure on Fagaima communal land known as Alatutu`i to be undertaken by Matagi as "building owner." Defendant Liz Taylor, an

undisputed blood member of the Fagaima family, contends that the land area affected was already assigned to her side of the family by previous *matai*, and that Matagi is not even a member of the Fagaima family.

While this matter lay pending, Liz Taylor, now joined by Avalogo Taylor ("Avalogo") and a number of other adult members from her side of the Fagaima family (jointly the "Taylors"), filed suit against Matagi and other individuals in his household, resulting in LT No. 38-03. Alleging physical attacks and continued harassment by Matagi and his growing family, the Taylors seek eviction and injunctive relief.

## Discussion

We find on the evidence that the land area in question is Fagaima communal land initially cleared, cultivated and occupied by Avalogo's parents Aifa`i Fagaima and Tapu Taylor shortly after the Second World War. They settled in this locality following the forced inland relocation of Tafuna villagers from the coastal area now incorporating the Tafuna International Airport. At the time, the disputed area and its surrounds was largely unoccupied bushland and here Avalogo's parents built a home, planted typical subsistence crops (ta`amu (giant taro), bananas, breadfruit etc.), and raised their children.

In time, Avalogo himself married around 1958 or 1959, built his first house on the land, an *afakasi* (semi-European) style home, and raised five children, four girls and one boy. He next built a two-storied wooden building on the land. In 1972, however, Avalogo moved off-island for medical reasons. He left his brother-in-law from Western Samoa, Laki Matavao ("Laki"), and his brother-in-law's wife, Eleele, to look after his family's holdings—the home and the plantations—and to tend to the land.

While off-island, Avalogo would periodically visit the territory and check on the property in Tafuna. During this time, relations with his in-laws were at first cordial. However, when Laki subsequently managed to move to the mainland, leaving behind Eleele and her children on the land, the family connection to Avalogo was essentially severed, and Eleele became increasingly assertive and possessive with respect to the land and its appurtenances. In 1987, Avalogo moved back to the territory only to be barred from his family's land through a continuing course of violence and threats of violence by Eleele and her growing family from (Western) Samoa. (A recent attempt by Avalogo in 2000 to tend to the grave of one his grandsons was met by an encounter with one of Eleele's sons, the defendant Aitui, who threatened to dig up Avalogo's grandson's grave and cut up his remains.).

Even efforts by the late *sa`o* Fagaima Taylor to reinstate Avalogo on the land, which included an eviction notice to Eleele as well as a written assignment of some 6.62 acres of the land to Avalogo, did not deter Eleele and her family. So too were the Taylors' complaints to the police unavailing. Eleele made quite clear to Avalogo and the Taylors that the land was hers. In the ensuing course of events, Fagaima Taylor and Eleele both passed on, leaving Avalogo and his children to still be confronted by a belligerent and bellicose group of people, I`umai Matagi, Aitui Titui, Tomoto Filo, Peka Filo, Matelika Aitui, Ace, Afatia Taylor, Liufau (collectively "Eleele's family"), all steadfast in their refusal to move off the land.

The basis of Eleele's family's claim to entitlement seems, as far as we can gather from the evidence, to be two-fold: (1) their service to the current *matai*, who signed a separation for them to build/extend a home of their own on the disputed area; and, (2) the claim that one of their own, Afatia Taylor ("Afatia"), is a biological child of the late *sa`o*, Fagaima Taylor.

The current *sa`o*, Fagaima, while conceding that the principal defendants from Eleele's family are not blood members of the Fagaima family, feels that they have been living within the family for many years. While acknowledging a number of complaints he had received from Avalogo regarding the violence his family had suffered at the hands of Eleele's family, the *matai* does not to want to intervene in the dispute between the Taylors and Eleele's family. Rather, being new to the office of *sa`o*, he takes the position that it is Avalogo's problem to remove the defendants since he was responsible for allowing them on the land in the first place. From what Fagaima knows of the defendants' background, they came into the family land through Avalogo's wife and that they have rendered *tautua* (traditional service) in the way of intermittent contributions to *fa`alavelave* (family affairs) that he had received.

Afatia's claim to entitlement through the late *matai* Fagaima Taylor, is based upon a (Western) Samoan birth certificate which purports to record the birth of a child "Richard," on August 20, 1983, in Faiaai, Samoa, to Fagaima Afatia Taylor of American Samoa and Tuaoloa Vaimanino Filo of Falealupo, Savai`i.

This claim is vigorously opposed by the Taylors, who maintain that Afatia after being brought to American Samoa was raised by Eleele's household and not by Fagaima Taylor; and that Afatia's birth certificate is based upon a fraud perpetuated for immigration purposes to allow Afatia to enter American Samoa as a very young child. Avalogo testified that Fagaima Taylor was his brother and that his brother had died childless. Soata Vili Williams ("Williams"), a resident of Vaoala, Samoa, testified to personal knowledge about the issuance of the birth

certificate in question. He testified that he and Fagaima Taylor are first cousins and that he was personally present with Fagaima Taylor at the time the birth certificate was first sought and issued in the beginning of 1984. According to Williams, Eleele had approached Fagaima Taylor about her wanting to take her niece Manino's baby, Afatia, to American Samoa, and that Fagaima Taylor had agreed to have his name added to the child's birth registry as the father to facilitate entry into the Territory. Williams further testified that he had accompanied Fagaima Taylor and others to the Samoa Birth Registrar's office where the child's birth record, which originally did not contain an entry for the child's father, was amended accordingly. Williams testified that he actually signed as witness on the documentation presented that day. He additionally added that the birth records were again subsequently amended in 2002, to reflect the natural mother, who was not before the Birth Registrar on the first occasion, as an informant for the amendments.

■ We note parenthetically at this point that while judgments of the courts of Samoa may under certain circumstances be recognized in American Samoa under the doctrine of comity,[1] we are not prepared to accord the same regard to paternity proceedings arising administratively through the actions of a foreign country's registrar of births.[2] Be that as it may, the question of Afatia's natural circumstances is neither critical nor dispositive on the primary question before us; namely, entitlement to the disputed area.

■ It is clear on the evidence that the land at issue is a part of the Fagaima family's communal property *Alatutu`i*, held by the Taylors according to Samoan custom. The evidence is also abundantly clear that the disputed area was long ago the subject of an assignment interest granted to the Taylors, as blood members of the Fagaima family, by former *matai*. This court has on numerous occasions recognized "the unquestioned right of a family member to use communal land [as being] a property right under the due process clause of either the U.S. or Samoan constitutions." *Fairholt v. Aulava*, 1 A.S.R.2d 73, 74 (Land &

---

[1] Comity is the recognition which one nation allows within its territory to legislative, executive, or judicial acts of another nation having due regard to both international duty and convenience, and to the rights of persons protected by its law. *In re Petition of Puailoa*, 13 A.S.R.2d 22, 24 (Trial Div. 1989), citing to *Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185 (1922).

[2] *Cf.* A.S.C.A. §§ 45.1501 et seq., codifying the local requirements for paternity judicial declarations, and A.S.C.A. §§ 45.1601 et seq., setting out support proceedings before the courts on behalf of children born of out of wedlock.

At the same time, the courts here have encountered on more than one occasion, amended Samoan birth certificates made with clear underlying purposes of immigration to the Territory.

Titles Div. 1983) (discussing U.S. CONST. amend. V; REV. CONST. AM. SAMOA art. I, § 2); *see Lutu v. Taesaliali`i*, 11 A.S.R.2d 80, 87 (Land & Titles Div. 1989) (citing *Tuanaitau v. Pagofie*, 4 A.S.R. 375, 381 (1963); *Gi v. Temu*, 11 A.S.R.2d 137, 143 (Land & Titles Div. 1989) (citing *Lutu*). At the same time, there has been no credible evidence presented to suggest that those property rights of the Taylors to Alatutu`i have in any way been diminished or lost.

On the other hand, Eleele's family, including Afatia, who are on the land, have no cognizable right to the land independent of the Taylors. Their rights to the land are purely derivative, through the Taylors. As noted above, the current *sa`o* testified as much,[3] and Laki, Eleele's estranged husband, admitted as much in his notarized statement, from Montgomery County, Tennessee, declaring that the disputed structure was never his, but belonged to the Taylors.

■ Setting aside Afatia's claim to entitlement for now, all the other members of Eleele's family are non-members of the Fagaima family, and as such they are without such "property rights" in *Alatutu`i* as contemplated by the due process clause of either the U.S. or American Samoa Constitution. *Fairholt; see also Lutu*, 11 A.S.R.2d at 87 ("[A non-family member] by definition has no such right.").

■ In Afatia's case, and assuming but not accepting for these purposes that he is a blood member of the Fagaima family, family status alone does not give Afatia occupation rights to family property that has long ago been the assigned interest of other family members, namely the Taylors. To the contrary, the Taylors as assignees received certain traditional property rights according to Samoan custom, including the right to remain on the land for life, absent good cause for removal. *Pen v. Lavata`i*, 30 A.S.R.2d 10, 18 (App. 1996), *citing Coffin v. Felise*, 4 A.S.R. 14, 18 (Land & Titles Div 1970) ("An express or implied assignment of a communally owned house and appurtenant areas creates in the family member the right to continue beneficial occupancy until death, voluntary removal or authorized removal."). *See also Taesali v. Samuela*, 3 A.S.R. 359, 361-62 (Trial. Div. 1958); *Gi*, 11 A.S.R. at 142. And as we alluded to above, the Taylors as assignees also have a property interest that is protected under the due-process clauses of the United States and American Samoa constitutions, *see* U.S. CONST. amend. V; REV. CONST. AM. SAMOA art. I, § 2, and as such, they are entitled to possess the family's land which has been assigned to them.

---

[3] The *sa`o's* seemingly indifferent stance towards the dispute between the Taylors and Eleele's family appears, based on his view, that since the Taylors were responsible for introducing Eleele onto family land that Eleele's family was thereby the Taylor's responsibility.

In their final argument, Eleele's family submit that the actions/inactions of the family *sa`o*, Fagaima Taylor and Fagaima, in not acceding to the Taylors' efforts to have them removed from the land, together with Fagaima's execution of the Separation Agreement with Matagi, have somehow ripened into an entitlement to remain on the land. We see no basis in custom or law for this premise.

■ First, a *sa`o* cannot revoke an assignment of land for a family member's use, made in accordance with Samoan custom by a former *matai*, "except for good cause." *Taesali v. Samuela*, 3 A.S.R. 359, 361 (Trial Div. 1958); *Gi*, 11 A.S.R.2d at 142 (citing *Taesali*). "Good cause" for removal includes a failure to render *tautua* (traditional service to the *matai* and family) and an overriding family purpose. *Pen*, 30 A.S.R.2d at 18.

■ Here, there was absolutely no suggestion on the evidence that the Taylors had failed to render *tautua*. With regard to an overriding family purpose, the Appellate Division has said that removal of an assignee for an overall family purpose may only be ordered by the *matai* if certain specific conditions are met, namely:

> a. A family meeting at which all parties are permitted to be heard.
> b. A decision by the *matai*, reasonable under the circumstances, that the removal is for an important family purpose.
> c. Provision of specific alternate land for erection of a dwelling unit if desired, or other arrangement reasonable under the circumstances.

*Id.*, citing *Coffin v. Felise*, 4 A.S.R. 14, 18 (Land & Titles Div. 1970). Again, the evidence lacks any basis for the contention that an overriding family purpose existed to sustain the Taylors removal from *Alatutu`i* in favor of Eleele's family. In short, the evidence does not show that the *sa`o* had "cause" to enter into a separation agreement with third parties in derogation of the Taylors' assigned interests in Alatutu`i.

## Order

Accordingly, we conclude in favor of the Taylors and grant their petition for the eviction of Eleele's family from the disputed area. We hold that the Separation Agreement entered into between Fagaima and Matagi is a nullity and of no effect against the Taylors and their assigned interest in the land.

It is so ordered.